## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Eric A. Freeland,

              Plaintiff,

v.

Lorenzini & Associates, Ltd. and Ronald
N. Lorenzini, Jr.,

              Defendants.

Case No. 19 CV 07888

Honorable Nancy L. Maldonado

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Eric Freeland's motion for summary judgment on his breach of contract and Illinois Wage and Payment Collection Act ("IWPCA") claims. (Dkt. 109.) Plaintiff alleges that Lorenzini & Associates, Ltd. ("Lorenzini & Associates") and Ronald N. Lorenzini, Jr. (collectively, "Defendants") underpaid him his salary for five years and failed to reimburse him for his health insurance premium payments. (Dkt. 106 ¶¶ 19–35.) Defendants dispute that Freeland and the firm ever had an employment agreement providing for Freeland's salary and the reimbursement of his insurance premiums. (Dkt. 132.) For the reasons stated in this Opinion, the Court denies Freeland's motion for summary judgment on both his breach of contract and IWPCA claims. By July 15, 2024, the parties should submit a joint status report indicating their availability for a trial in the fall or winter of 2024 and whether they wish to be referred to the assigned magistrate judge for a settlement conference.

### Background

Because this case is before the Court on summary judgment, the factual record is framed largely by Eric Freeland's Local Rule 56.1 statement of facts, although the Court retains discretion

to "consider other materials in the record" where appropriate. Fed. R. Civ. P. 56(c)(3).[1] Except as otherwise noted below, the following represents the undisputed facts based on Freeland's Local Rule 56.1 statements and responses. Where the facts are properly disputed, the Court has indicated each side's position.

Ronald Lorenzini is the sole shareholder, director and officer of the law firm, Lorenzini & Associates. (Dkt. 134 at 43 ¶ 3.)[2] Freeland joined Lorenzini & Associates in 2000 as an attorney and left the firm on August 12, 2019. (Dkt. 131 ¶¶ 1, 4.) Freeland alleges that, as of May 16, 2003, he and Lorenzini & Associates agreed that he would be paid a base salary of $100,000 per year, paid in 24 installments of $4,166.67 on the fifteenth and last day of each month. (*Id.* ¶ 2.) Freeland's bimonthly installment payments of $4,166.67 were designated as "REGLAR" pay on his pay statements. (*Id.* ¶ 5.) The firm consistently paid Freeland the aforementioned amount from May 16, 2003 to 2015, except for a one-year period from 2008 to 2009 when his regular salary took a dip due to the "Great Recession." (*Id.* ¶ 5.) Lorenzini & Associates also paid Freeland periodic bonuses in varying amounts, which were designated as "BONUS" pay on his pay statements. (*Id.* ¶ 6.) The parties signed a stipulation that all of Freeland's payroll records and W-2 tax forms accurately reflect all compensation paid by Defendants during Freeland's employment. (Dkt. 111-8.) Defendants, however, dispute that there was ever an agreement between Freeland and Lorenzini & Associates. (*Id.* ¶ 2; Dkt. 134 at 43 ¶ 5.)

Freeland alleges that he was underpaid his base annual salary from 2015 to 2019. (Dkt. 131 ¶¶ 16–19.) In 2015, Freeland was paid $72,125.04 in regular salary. (*Id.* ¶ 16.) In 2016, Freeland

---

[1] The Court in particular cites to: (1) Defendants' response to Freeland's statement of facts, (Dkt. 131), in which both the asserted fact and the opposing party's response are set forth in one document; (2) the parties' stipulation to particular facts. (Dkt. 111-8); and (3) the parties' respective affidavits, (Dkt. 111-1; Dkt. 134 at 43–44.)

[2] Page numbers are taken from CM/ECF headers, except when the Court cites to deposition testimony and hearing transcripts, in which case the Court will cite to the internal transcript page and line number.

was paid $37,500.01 in regular salary. (*Id.* ¶ 17.) In 2017, Freeland was paid $75,700.00 in regular salary. (*Id.* ¶ 18.) Finally, in 2019, Freeland was paid $10,387.01. (*Id.* ¶ 19.) Defendants never provided Freeland with any formal notice of the change in his compensation, although their position is that none was needed because there was never an underlying agreement. (*Id.* ¶ 22.)

The parties also stipulated that until February 2017, Defendants paid for Freeland's medical insurance premiums but charged Freeland a portion of the amount paid, as indicated by the voluntary deduction labeled "MEDICL" on Freeland's pay statements. (Dkt. 111-8; Dkt. 131 ¶ 7.) According to Freeland, in February 2017, Freeland's medical insurance provider informed him that it would no longer accept third-party checks as payment for his premiums, and he would need to pay his premiums personally. (Dkt. 111-1 ¶ 5.) Freeland contends that he and Lorenzini agreed that Freeland would pay the premiums directly to his health insurance provider. (*Id.*) Lorenzini & Associates was supposed to subsequently partially reimburse Freeland for his premiums. (*Id.*) From 2017 to 2019, Freeland did not receive any reimbursements for the health insurance premiums he paid. (Dkt. 131 ¶ 20.) Defendants dispute that they ever entered into an agreement with Freeland to reimburse his insurance premiums. (*Id.* ¶ 10–11; Dkt. 133 at 1–2.)

On December 2, 2019, Freeland initiated the instant action against Defendants in federal court based on diversity jurisdiction and subsequently filed the operative First Amended Complaint on September 8, 2022. (Dkts. 1, 106.) Freeland brings a breach of contract claim against Lorenzini & Associates for failing to pay Freeland his full base salary and reimburse him for his health insurance premiums. (Dkt. 106 ¶ 22.) Freeland also brings IWPCA claims against Lorenzini & Associates and Lorenzini, individually, for failing to pay Freeland his full salary. (*Id.* ¶¶ 28, 35.) Lorenzini seeks both compensatory damages for his unpaid wages and unreimbursed insurance premiums and IWPCA statutory damages for his unpaid wages. (*Id.*) Since Defendants' prior

counsel withdrew, Lorenzini has been representing Lorenzini & Associates and proceeding pro se on his own behalf. (Dkts. 92, 62, 68.)

On June 6, 2022, Judge Ellis held a hearing on Lorenzini's motion to amend the answer to Freeland's complaint. (Dkt. 87.) At that hearing, Lorenzini indicated his intent to withdraw his then-defense that Freeland and Lorenzini & Associates did not have an agreement as described by Freeland, but instead only had an agreement to pay Freeland based on the health of the firm. (*Id.* at 2:21–23.) After Lorenzini expressed his unwillingness to produce documents related to the financial health of his firm, (*id.* at 10:1–11:3), Judge Ellis gave him the option to either produce the documents or waive the defense altogether. (*Id.* 24:5–18.) Lorenzini agreed to waive his defense that Freeland's compensation was determined based on how the firm was doing financially, and Judge Ellis informed Lorenzini that his waiver meant that "in your deposition and any further written answers to discovery or on summary judgment or at trial, you are not to bring up and you are expressly waiving your ability to rely on how the firm was doing as a factor in determining what you paid Mr. [Freeland]." (*Id.* at 24:20–24.)

Following the close of discovery, Freeland moved for summary judgment on his breach of contract and IWPCA claims. (Dkt. 109.)

## Legal Standard

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking

summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone, but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

### Discussion

Freeland seeks summary judgment on both his breach of contract and IWPCA claims. (Dkt. 109.) Before turning to the substance of the parties' arguments, the Court will briefly address two of the parties' arguments, which are unrelated to the merits of this case.

First, Defendants contend that Freeland waived his response to Defendants' affirmative defenses by failing to address the affirmative defenses in his initial motion for summary judgment. (Dkt. 132 at 5–7.) The only in-circuit case that Defendants cite to in support of this argument is *Navistar Int'l Transp. Corp. v. Freightliner Corp.*, No. 96 C 6922, 1998 WL 786388 (N.D. Ill. Nov. 6, 1998). (*Id.* at 6.) But more recently, when a plaintiff has filed a motion for summary judgment, other courts in this District have required "the defendant to raise its affirmative defenses in the

opposition brief, rather than requiring the plaintiff-movant to refute affirmative defenses in its opening brief." *Sunshine Imp & Exp Corp. v. Luxury Car Concierge, Inc.*, No. 13 C 8925, 2015 WL 2193808, at *3 (N.D. Ill. May 7, 2015); *Frerck v. Pearson Educ., Inc.*, 63 F. Supp. 3d 882, 886–87 (N.D. Ill. 2014); *Bakov v. Consol. World Travel, Inc.*, No. 15 C 2980, 2020 WL 10963926, at *2 (N.D. Ill. Apr. 21, 2020). These courts have reasoned that "[b]y moving for summary judgment on an entire claim, the plaintiff implicitly contends there is no genuine dispute about any fact material to the defendant's affirmative defense." *Sunshine Imp & Exp Corp.*, 2015 WL 2193808, at *3. In addition, in cases where the defendant has taken a "shotgun approach" to affirmative defenses, courts have found that this approach better serves judicial economy by forcing the defendant to identify and argue the relevant defenses. *Id.*

The Court finds the more recent approach persuasive and holds that Freeland was not required to address Defendants' affirmative defenses in his opening brief. Defendants concede that they took a shotgun approach to some of their affirmative defenses, (Dkt. 132 at 6), and it was Defendants' responsibility to develop fully the affirmative defenses that matter in their briefing. Accordingly, the Court will only address the arguments that Defendants actually raise in their response to Freeland's summary judgment motion.[3] *See Bakov v. Consol. World Travel, Inc.*, No. 15 C 2980, 2020 WL 10963926, at *2 (N.D. Ill. Apr. 21, 2020) (holding defendant waived affirmative defenses by not developing them in its response brief to plaintiff's motion for summary judgment or in its own summary judgment motion); *United Cent. Bank v. Wells Street Apartments, LLC*, 957 F.Supp.2d 978, 987–88 (E.D. Wisc. 2013) (holding that a defendant bringing an affirmative defense must "come forward with evidence showing the existence of a genuine factual

---

[3] For instance, the Court will not address Defendants' sixth affirmative defense that Freeland's IWPCA claims fail because Freeland is not an Illinois resident, (Dkt. 134 at 13), as Defendants, at most, mention this defense in passing in their response brief (and only in the context of arguing that Freeland had already waived a response to this affirmative defense). (*See* Dkt. 132 at 7.)

dispute concerning an affirmative defense that, if ultimately successful, would defeat the claim. If the defendant does not come forward with such evidence, and a plaintiff otherwise shows that it is entitled to judgment as a matter of law on his claim, then the affirmative defense is extinguished.").

Second, Freeland argues that because Defendants failed to cite to specific evidence in their denials to several of Freeland's material facts, and instead mostly cited to their answer to Freeland's complaint, those material facts should be deemed admitted under Local Rule 56.1(b)(3). (Dkt. 136 at 3.) Rule 56.1 requires a party moving for summary judgment to file a "statement of material facts as to which the moving party contends that there is no genuine issue and that entitles the moving party to a judgment as a matter of law." N.D. Ill. R. 56.1(a)(3). In response, the non-movant is supposed to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. R. 56.1(b)(3)(B). "The non-moving party's failure to admit or deny facts as presented in the moving party's statement or to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party as undisputed." *Curtis v. Costco Wholesale Corp*., 807 F.3d 215, 218–19 (7th Cir. 2015). District courts, however, "have broad discretion to enforce local rules governing summary judgment, including specifically Rule 56.1(b)(3)(B)." *Vinkler v. County of DuPage, Illinois*, No. 1:13-CV-1631, 2014 WL 2750239, at *1 (N.D. Ill. June 17, 2014) (quoting *Martin v. Gonzalez*, 526 F. App'x 681 (7th Cir. 2013)).

Although district courts, including this Court, typically strictly enforce the local rules, the Court will not automatically deem Defendants' responses that fail to cite to evidence in the record as admitted. Undoubtedly, Defendants did not follow the local rule, but the Court is mindful that Lorenzini is a pro se litigant (albeit a lawyer) and that Freeland himself also cited to his complaint

and Defendants' answer as partial support for some of his facts. (*See, e.g.*, Dkt. 131 ¶¶ 2, 11); *see also Mosely v. Bd. of Educ. of City of Chicago*, No. CV 03 C 4914, 2006 WL 8459746, at \*3 (N.D. Ill. Aug. 2, 2006) (explaining that "a *pro se* litigant enjoys the benefit of the doubt on procedural matters" although his pro se status is not a "license to ignore the Federal Rules of Civil Procedure or the Local Rules"). Particularly in view of the unusually small number of facts and evidence produced in this case, the Court will make a rare exception and refrain from automatically deeming Freeland's improperly refuted facts as admitted.

Having dispensed with these preliminary matters, the Court will now turn to the substance of Freeland's claims against Defendants, beginning with Freeland's IWPCA claims.

## I.      IWPCA Claims

In support of his IWPCA claims, Freeland alleges that he had an oral agreement with Defendants for an annual base salary of $100,000, to be paid out biweekly in the amount of $4,166.67 and that Defendants violated the IWPCA by not paying him his full wages from 2015 to 2019.

Under the IWPCA, a plaintiff may only recover wages that were due to him "pursuant to an employment contract or agreement." 820 Ill. 115/2. IWPCA claims must therefore be based on valid contracts or employment agreements. *Bruger v. Olero, Inc.*, 434 F. Supp. 3d 647, 652 (N.D. Ill. 2020). Courts, however, have repeatedly affirmed that an employment agreement under the IWPCA is broader than a contract and "requires only a manifestation of mutual assent on the part of two or more persons." *Landers-Scelfo v. Corp. Off. Sys., Inc.*, 827 N.E.2d 1051, 1059 (Ill. App. Ct. 2005) (quoting *Zabinsky v. Gelber Group, Inc.*, 807 N.E.2d 666 (Ill. App. Ct. 2004)). An "employer and an employee, by acting in a manner consistent with an employment agreement, can set the material terms of the agreement, including the amount of compensation." *Id.*

8

Freeland argues that his pay statements from Lorenzini & Associates demonstrate that Defendants paid him the same base salary for eleven years and therefore prove that said base salary was a term of Freeland and Defendants' employment agreement. (Dkt. 112 at 11.) In response, Defendants dispute the existence of an agreement, asserting that they paid him for "tasks performed." (Dkt. 132 at 2–3.) They further point out that Freeland is himself a lawyer that should have known to put an employment agreement in writing and that he continued working at the firm for five years despite allegedly being paid less than his annual salary. (Dkt. 132 at 3–5.)

The Court concludes that Freeland has failed to show that summary judgment is warranted on the issue of whether the parties had an oral agreement to pay Freeland an annual base salary of $100,000. In his Statement of Facts, Freeland states that he and Defendants agreed that he would be paid a base salary of $100,000.00 per year, paid in 24 installments of $4,166.67 each on the fifteenth and last day of each month and that Lorenzini & Associates paid Freeland that amount consistently from May 16, 2003 to 2015. (Dkt. 131 ¶¶ 2, 5.)

Freeland further argues that Defendants cannot contend that Freeland did not have a set salary and that Defendants instead paid him at their discretion because Freeland was paid both regular and bonus pay. (Dkt. 136 at 7.) According to Freeland, as a bonus is defined as "over and above" or "in addition to" regular pay, if Defendants were permitted to pay Freeland whatever amount they liked, then "*none* of [ ] Freeland's compensation could be 'bonus' because it would not be 'in addition to' anything." (*Id*.) As the Court understands his argument, Freeland is asserting that there must have been an agreement between the parties for a certain amount of regular pay, or else Defendants would not have been able to allocate a bonus payment above that regular pay.

Freeland's written pay statements, however, pose problems for Freeland's description of the alleged oral agreement. Specifically, Freeland's pay statements demonstrate some

9

discrepancies between pay periods, contrary to his assertion that he was always paid consistently. For instance, Freeland's pay statements show that there were several pay periods when Freeland received nothing in regular pay salary. (*See, e.g.*, *id.* at 210) (showing regular pay of $0 and bonus pay of $1500); (*id.* at 211) (regular pay of $0 and bonus pay of $1,000); (*id.* at 247) (regular pay of $0 and bonus pay of $1500); (*id.* at 269) (regular pay of $0 and bonus pay of $3000); (*id.* at 271) (regular pay of $0 and bonus pay of $3,000). Additionally, there were pay periods where he received more or less than $4,166.67 in regular pay. (*See, e.g. id.* at 184) (regular pay of $2,083.33); (*id.* at 261) (regular pay of $5,000); (*id.* at 291) (regular pay of $2,000); (*id.* at 305) (regular pay of $0 and bonus pay of $1,500). These discrepancies—even if few in number—undercut Freeland's assertion that he was uniformly paid in installments of $4,166.67 in regular pay. Further, the fact that Freeland was paid only in bonus pay during some pay periods undercuts his assertion, stated above, that the distinction between regular and bonus pay indicates that Freeland and Defendants had an agreement for a particular amount of regular pay to be paid out biweekly.

Although Freeland's 2004–2007 pay statements show that he was paid $100,000.08 annually in regular pay, it appears that his regular pay for other years was more variable. (Dkt. 111-12 at 28–126.)[4] For example, his final pay statement of 2010 states that he was paid on December 31, 2010 and that his regular pay for the year-to-date was $97,916.74. (*Id.* at 201). His final pay statement of 2013 states that he was paid on December 20, 2013 and that his regular pay for the year-to-date was $100,833.41. (*Id.* at 281.) Finally, his last pay statement of 2014 shows that he was paid on December 30, 2014 and that his regular pay for the year-to-date was $97,833.41. (*Id.* at 307.) In summary, it appears that at least for the years of 2010, 2013, and 2014,

---

[4] Freeland did not clarify whether he was calculating his annual base salary from the first day of the calendar year. Nevertheless, in his chart detailing his unpaid wages, (Dkt. 111-11), Freeland calculated the amount he was underpaid starting from the first day of the calendar year, and so the Court followed suit.

Freeland was either paid less or more than his alleged annual base salary in regular pay. While these differences are slight, Freeland does not explain these discrepancies, and he rests his motion for summary judgment on the consistency of his pay statements.[5] Freeland's own evidence, however, undermines his contention that he was paid an annual, base salary of $100,000 in regular pay.

In support of his argument that the parties' prior conduct can manifest the terms of their argument, Freeland relies on *Landers-Scelfo v. Corporate Office System Inc.*, but the procedural posture and the plaintiff's allegations therein make that case distinguishable. (Dkt. 112 at 10; Dkt. 136 at 6) (citing 827 N.E.2d 1051). In *Landers-Scelfo*, the Illinois Appellate Court reversed the trial court's dismissal of the plaintiff's complaint and held that a plaintiff's allegation "that an entity paid a worker according to a demonstrable formula for work done is sufficient to raise an inference that the entity and the worker had an employment agreement that embodied the formula." *Id.* at 1067. The plaintiff alleged that the defendant agreed to pay her commissions according to a compensation formula laid out in a letter the defendant sent her, and she sued the defendant for violating the IWPCA after the defendant ceased paying her commissions consistent with the formula, despite having done so for close to a year. year. *Id.* at 1063. In coming to its holding, the *Landers-Scelfo* court rejected the defendant's argument that the plaintiff failed to properly allege that the defendant assumed the duty to pay her pursuant to the compensation formula when the defendant allegedly paid her according to that formula for almost a year. *Id.* at 1068.

In the instant action, however, the parties are at the summary judgment stage, where the Court does not take the plaintiffs' allegations to be true, and instead, must assess whether the

---

[5] The Court omits discrepancies that were already acknowledged and explained by Freeland. For example, Freeland explained that he was not paid his regular amount from 2008 to 2009 due to the "Great Recession." (Dkt. 112 at 11.) Freeland also explained that in 2003, he was issued a paycheck in the amount of $3,541.67, which was an error that was subsequently corrected in his next paycheck, which included an additional $625.00. (Dkt. 136 at 6, n.1.)

evidence in the record substantiates the plaintiff's allegations; comparing Freeland's evidence to the plaintiff's allegations in *Landers-Scelfo* is thus a mismatched exercise. Additionally, in *Landers-Scelfo*, the plaintiff alleged that the defendant agreed to pay her according to a compensation formula set out in a letter the defendant had sent her and that the defendant paid her according to that formula for nearly a year. Here, in contrast, aside from his affidavit, Freeland's only evidence of the terms of the purported agreement are his pay statements, which suggest that the parties' payment history was somewhat inconsistent. In short, the Court finds that Freeland's evidence fails to adequately demonstrate on what terms, if any, the parties mutually agreed; Freeland has failed to establish that Defendants paid him "according to a demonstrable formula." *Id.* at 1067.

At bottom, although an "agreement" under the IWPCA is broader than a formally negotiated contract, the Court must be mindful of the standards applied to a motion for summary judgment. To prevail on his IWPCA claim at summary judgment, Freeland must demonstrate, as a matter of law, that there was a manifestation of mutual assent between the parties to certain terms and that Freeland was underpaid according to those terms. *See Jaramillo v. Garda, Inc*., No. 12 C 662, 2012 WL 1378667, at *2 (N.D. Ill. Apr. 20, 2012) ("[T]he IWPCA merely demands that employers pay whatever wages were agreed to."). Although Freeland argues, with no citation to any caselaw, that because Lorenzini testified that he has no recollection of an oral agreement about Freeland's base salary, the Court should treat his claim as undisputed and unrebutted, the Court reminds Freeland that it is reviewing his motion and that inferences at summary judgment flow to the non-movant, here Lorenzini and his firm. (Dkt. 112 at 7). Freeland must therefore first meet his burden of demonstrating that there is no genuine dispute of material facts on the disputed issue. The Court ultimately concludes that Freeland has not offered sufficient evidence that would enable

the Court to hold, as a matter of law, that the parties entered into an agreement and to define its terms and that Freeland was underpaid according to that agreement. *See Cohan v. Medline Indus., Inc.,* 170 F. Supp. 3d 1162, 1176 (N.D. Ill. 2016), *aff'd*, 843 F.3d 660 (7th Cir. 2016)) (holding that plaintiffs had not provided evidence showing that they were entitled to the alleged commission calculation). The Court therefore concludes that a jury is needed to assess the parties' credibility on the existence and/or details of any agreement.

Lastly, given that the Court has already found that the question of whether there was an agreement between the parties for IWPCA purposes is a question of fact, best left to the jury, the Court declines to resolve the issue of whether Freeland's continued employment at Lorenzini & Associates precludes Freeland's IWPCA claim. For the reasons stated above, Freeland's motion for summary judgment on his IWPCA claims is denied.

## II.     Breach of Contract Claim

The Court will now turn to Freeland's breach of contract claim, which involves two alleged oral contracts between Freeland and Defendants. The first is the alleged oral agreement over Freeland's salary, which has been discussed at length above. The second is the alleged oral agreement that starting in 2017, Defendants would reimburse Freeland for a portion of the insurance premiums he paid directly to his medical insurance provider.

As the Court has already found that Freeland failed to produce enough evidence for the Court to grant summary judgment on Freeland's IWPCA claim, the Court likewise holds the same for Freeland's breach of contract claim for his unpaid wages. As mentioned in the prior section, an agreement under IWPCA is broader than a contract. *Landers-Scelfo*, 827 N.E.2d at 1059. It follows that if Freeland has not provided sufficient evidence for the Court to hold, as a matter of law, the terms of his alleged agreement under the IWPCA, he has not provided sufficient evidence for the

13

Court to hold, as a matter of law, that he had an oral contract to be paid an annual base salary of $100,000. The Court therefore denies summary judgment on Freeland's breach of contract claim for his unpaid wages.

Finally, the Court will evaluate whether Freeland has met his burden on summary judgment for proving that the parties entered into an oral contract for insurance premium reimbursements. "Under Illinois law, to state a cause of action for breach of contract, a plaintiff must allege sufficient facts to establish four elements: (1) the existence of a valid and enforceable contract containing both definite and certain terms; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) injury to the plaintiff." *Aprill v. Aquila*, No. 20 C 04657, 2022 WL 614984, at *10 (N.D. Ill. Mar. 1, 2022) (quoting *Ken-Pin, Inc. v. Vantage Bowling Corp.*, No. 02 C 7991, 2004 WL 783092, at *3 (N.D. Ill. Jan. 20, 2004)). "[O]ral employment contracts are viewed more skeptically than written ones." *Id.* (quoting *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996)).

"The existence of a contract, its terms, and the parties' intent are questions of fact to be determined by a trier of fact," but if there is no factual dispute, the existence of the contract is a question of law for the court. *Arbogast v. Chicago Cubs Baseball Club, LLC*, 194 N.E.3d 534, 542 (Ill. App. Ct. 2021). For a contract to be enforceable, there must be "a sufficiently concrete expression of the essential terms of the agreement" and "mutual assent as to the contract's terms." *Allscripts Healthcare, LLC v. Etransmedia Tech., Inc*., 448 F. Supp. 3d 898, 904 (N.D. Ill. 2019). "Whether parties have mutually assented to the terms of a contract is a question of fact" and their mutual assent "is determined by an objective standard." *Arbogast*, 194 N.E.3d at 542. "[I]t is not necessary that the parties share the same subjective understanding as to the contract's terms, as it suffices if their conduct objectively indicates an agreement to the terms of the purported contract."

*Id.* Thus, "the parties' overt acts and the communications between them may be considered in determining whether and upon what terms they have entered into a contract." *Id.*

The Court concludes that Freeland has not shown there is no genuine dispute of material fact as to whether there was an oral contract between the parties for the reimbursement of Freeland's insurance premiums. In support of his claim, Freeland mainly relies on his pay statements, which reflect the "MEDICL" voluntary deduction, the parties' stipulation that from the beginning of his employment until 2017, Defendants paid a portion of Freeland's insurance premiums, and his affidavit, in which he avers the existence of the agreement. The Court finds that the question of whether the parties entered into an oral agreement for insurance premium reimbursements should still go to a jury. As stated above, the existence of a contract is a question of fact unless there is no factual dispute as to the contract's existence. *Arbogast*, 194 N.E.3d at 542. Certainly, the parties' conduct, as demonstrated through the pay statements, suggests that they had an agreement prior to 2017 under which Defendants paid for a portion of Freeland's insurance premiums. But the Court finds that Freeland ultimately fails to supply sufficient evidence to support his claim that in 2017, the parties both assented to a change in that agreement. Freeland's proffered evidence of the change in the agreement is his affidavit, which Lorenzini disputes. The Court therefore cannot say that no factual dispute exists regarding whether the parties had a contract pursuant to which Defendants were required to reimburse Freeland for his insurance premiums.

The Court therefore denies summary judgment on Freeland's breach of contract claim for the reimbursement of his insurance premiums.

**Conclusion**

For the foregoing reasons, the Court denies Freeland's motion for summary judgment on his IWPCA claims and his breach of contract claims.

ENTERED: 7/1/24

_____

Nancy L. Maldonado

United States District Court Judge

16